**Clayton BANE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 22S00–9107–CR–526.**

Supreme Court of Indiana.

Feb. 25, 1992.

William L. Francis, Sp. Public Defender, Tackett, Taurman & Sonne, New Albany, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Clayton Bane, was convicted by a jury of murder and received a sentence of 60 years. Additionally, he received one year for contempt of court to be served consecutively with the 60 year sentence. He raises seven issues in this direct appeal. They are:

1. Whether the trial court's instruction on voluntary manslaughter was erroneous;

2. Whether verdicts of guilty of murder and not guilty of voluntary manslaughter are inconsistent;

3. Whether the court erred in failing to give the defendant's instruction regarding a presumption of innocence;

4. Whether the State conducted a prejudicial voir dire;

5. Whether the court erred in admitting a statement the defendant made while in police custody;

6. Whether error occurred when the State filed a motion to revoke the defendant's probation, thereby publicizing his convictions, after a motion in limine had been granted; and,

7. Whether the evidence was sufficient to sustain the conviction.

On July 4, 1990, 44–year–old Bane shot and killed his 17–year–old wife, Laura. Before marrying Laura, Bane had been married to Debbie Bane, Laura's mother. On Independence Day, Laura, along with some of her friends, had gone to her mother's house by the Ohio River to watch a fireworks display. At some point during the evening, Clayton Bane, along with his nephew, Roy Wolfe, Jr., also drove to the riverfront to watch the display. Laura and Debbie Bane approached Bane insisting that he and Wolfe leave the property. An argument ensued between Laura, standing next to the passenger window, and Bane who was seated in the driver's seat of the car. Wolfe, who was seated in the passenger seat, joined in the argument intermittently. Clayton Bane pulled out a .22 semiautomatic pistol, shot past Wolfe striking Laura in the chest several times and drove away. This shooting resulted in Laura's death.

### I. *Jury Instructions*

Bane was charged with both murder and voluntary manslaughter. The jury received the following instruction regarding these charges:

*Murder* I.C. 35–42–1–1. A person who knowingly kills another human being commits Murder, a felony.

Thus under Indiana law, in order to find the Defendant, Clayton Bane, guilty of the crime of Murder in Count I, you the jury must find proof beyond a reasonable doubt of each of the following elements: (1) The Defendant; Clayton Bane; (2) knowingly; (3) killed; (4) Laura Bane.

If you find that any of these elements have not been proven beyond a reasonable doubt, you should find the Defendant not guilty of Murder in Count I.

If you find that the State has proven each of these elements beyond a reasonable doubt, you should find the Defendant guilty of Murder in Count I.

You are instructed that the offense of Voluntary Manslaughter by Means of a Deadly Weapon in Count II, is defined by Indiana statute including the elements

contained therein insofar as they are applicable, as follows:

*Voluntary Manslaughter.* I.C. 35–42–1–3—A person who knowingly kills another human being while acting under sudden heat commits Voluntary Manslaughter, a class B felony.

However, the offense is a class A felony if it is committed by means of a deadly weapon. The existence of sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter.

Thus under Indiana law, in order to find the Defendant, Clayton Bane, guilty of the offense of Voluntary Manslaughter by Means of a Deadly Weapon in Count II, you the jury must find proof beyond a reasonable doubt of each of the following elements: (1) The Defendant, Clayton Bane; (2) knowingly; (3) killed while acting under sudden heat; (4) Laura Bane; (5) by means of a deadly weapon.

If you find that any of these elements have not been proven beyond a reasonable doubt, you should find the Defendant not guilty of the offense of Voluntary Manslaughter by Means of a Deadly Weapon, a class A felony, in Count II.

If you find that the State has proven each of these elements beyond a reasonable doubt, you should find the Defendant guilty of Voluntary Manslaughter by Means of a Deadly Weapon, a class A felony, in Count II.

\* \* \* \* \* \*

The term "sudden heat" means an excited mind. It is a condition that may be created by strong emotion such as anger, rage, sudden resentment or jealousy. It may be strong enough to obscure the reason of an ordinary person and prevent deliberation and meditation. It can render a person incapable of rational thought.

Bane argues that this instruction is both misleading and a misstatement of the law. He contends that the voluntary manslaughter instruction necessitates the State's proving beyond a reasonable doubt that the defendant killed while acting under sudden heat. If the State fails to prove sudden heat beyond a reasonable doubt, it is impossible for Bane to be sentenced on a lesser offense. The instruction, Bane argues, misleads the jury regarding the quantum of evidence necessary to reduce murder to voluntary manslaughter.

■ *Ind. Code* § 35–42–1–3 defines voluntary manslaughter as the knowing or intentional killing of another human being while acting under sudden heat. Subsection (b) notes that the existence of sudden heat is a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter. *See also Palmer v. State* (1991), Ind., 573 N.E.2d 880, 1261 (on Petition for Rehearing of Post–Conviction Relief); *Finch v. State* (1987), Ind., 510 N.E.2d 673, 675. Sudden heat is an evidentiary predicate which allows the mitigation of a murder charge to voluntary manslaughter.

■ The instruction in this case improperly suggested to the jury that sudden heat is an element which must be proven beyond a reasonable doubt by the State. The statute defining voluntary manslaughter clearly, however, determines that sudden heat is not an element of the crime of voluntary manslaughter; rather it is a mitigator. As such, once the issue of sudden heat has been injected into the case, the burden is on the State to negate its existence. *See, Reinbold v. State* (1990), Ind., 555 N.E.2d 463. It is then for the jury to decide whether the evidence presented constituted sudden heat sufficient to warrant a conviction for voluntary manslaughter.

■ Once the evidentiary predicate of sudden heat has been introduced in a murder case, the defendant is entitled to a correct instruction on the lesser offense of voluntary manslaughter, as well as an instruction on murder which places the burden on the prosecution to negate the presence of sudden heat to the satisfaction of the jury. *Palmer v. State* (1990), Ind, 563 N.E.2d 601 (DeBruler, J., dissenting). "An instruction which does not place this burden on the prosecution is erroneous, detrimental to the substantial right of the de-

fendant and, where properly objected to and such objection is accompanied by a proper instruction, is cause for a new trial on the murder charge." *Id.* at 605.

■ In this case, Bane did not object to the court's instruction given on voluntary manslaughter, nor did he tender a proper instruction. Consequently, Bane's argument has been waived. Ind.Trial Rule 51(C). Bane, however, contends that the giving of the instruction constituted fundamental error. The instruction at one point suggested to the jury that sudden heat was an element of the crime of voluntary manslaughter. At another point, it cited the voluntary manslaughter statute and informed the jury that the sudden heat was a mitigating factor. Although inartfully drafted and, in fact, technically erroneous, the instruction does not constitute fundamental error because it did not deprive the defendant of his due process rights.[1]

## II. *Inconsistent Verdicts*

■ Bane also contends that it was inconsistent for the jury to have found him guilty of murder, but not guilty of voluntary manslaughter. Bain argues that the jury should have been instructed that, if they found him not guilty of murder, they must also find him not guilty of voluntary manslaughter. Such is simply not the case. Murder is the knowing or intentional killing of another person. Voluntary manslaughter is the knowing or intentional killing of another person while acting under the condition of sudden heat. Sudden heat is a mitigating factor that reduces what otherwise would be murder to a lesser degree felony. By returning a verdict of guilty of murder and not guilty of voluntary manslaughter, the jury has simply concluded that the condition of sudden heat was not sufficiently present to warrant mitigation. The verdicts are not contradictory.

1. It should be noted that the instruction given on voluntary manslaughter was a virtual reproduction of the instruction found in the Indiana Pattern Instructions. The Indiana Pattern Instructions have been created to provide a guide to judges and counsel. They have not, however,

## III. *Presumption Instruction*

■ Bane also argues that error occurred when the trial court failed to give his tendered instruction regarding his presumption of innocence and the reasonable deductions to be made from the evidence in light of that presumption. In *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 103, this Court said that when reviewing the denial of a tendered instruction, three factors must be considered: (1) Whether the instruction correctly states the law; (2) whether the evidence supports the instruction; and (3) whether other instructions have adequately covered the substance of the tendered instruction. *See also Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836. The Court in *Flowers* found that the tendered instruction was correct and that the evidence supported giving the instruction. However, the Court also found that the substance of the instruction was in fact covered by the other instructions given. Such was the case here. The jury received instructions on presumption of innocence, the jury's approach to the evidence, and reasonable doubt and, consequently, no error occurred in refusing Bane's tendered instruction on these same rules of law.

## IV. *Voir Dire*

■ Bane next contends that the State conducted a highly inflammatory and extremely prejudicial *voir dire* in violation of Bane's constitutional rights. During *voir dire*, the prosecution posed a number of hypotheticals to potential jurors outlining many of the more sensational facts of the case. In one example, the prosecution asks a potential juror what her feelings would be regarding a 17–year–old girl who witnesses her 40–year–old stepfather abuse her mother, and who also is herself the victim of this man's physical and sexual abuse, and yet goes on to later marry the man.

been endorsed by this Court as correct instructions in every circumstance. Often the error in the wording of the voluntary manslaughter instruction is cured by other instructions given simultaneously to a jury. This was not the case here.

Bane cites *Robinson v. State* (1973), 260 Ind. 517, 519, 297 N.E.2d 409, 411, as support for his argument that such *voir dire* violated his constitutional rights. In *Robinson,* the prosecutor in a murder case posed several questions to the jury to determine under what circumstances they would vote for the death penalty. One question assumed certain facts that were similar to the circumstances of the case, but were not facts that were presented during trial in any significant degree. The *Robinson* Court found that the questions propounded by the prosecutor were designed solely to inflame the prejudices of the jury rather than uncover what prejudices could keep them from rendering a fair verdict. The Court said:

> Viewing the evidence in a light most favorable to the state, the most that we can acknowledge is that it supported a suspicion that the friction between the defendant and the victim was incest oriented. There was no evidence presented from which the jury could have drawn such an inference beyond a reasonable doubt.

260 Ind. at 519–20, 297 N.E.2d at 411.

In the more recent case of *Barnes v. State* (1982), Ind., 435 N.E.2d 235, prospective jurors were asked whether they would be bothered in any way by a suggestion that the defendant and some of the witnesses might be homosexual. In *Barnes,* the Court noted that:

> It is not improper to inquire of prospective jurors if their own personal feelings could be influenced by such facts being presented so that the parties might know that an impartial and unprejudiced jury is trying their cause. There was no error here.

*Id.* at 238. As in *Barnes,* we believe that no error occurred in this case. The facts posed by the prosecutor, although sensational, were presented during the course of trial. The questions asked by the prosecutor were designed to determine whether prospective jurors would be prejudiced against the victim based on what a juror might view as the victim's poor judgment. The prosecution had valid reason for attempting to ascertain whether any jurors believed that the victim's action in marrying Bane despite a history of physical and sexual abuse committed upon her by him caused her to "deserve everything that happens to her." Trial Record at 739. The State's inquiry into whether some of the more provocative and unusual aspects of the case would unfairly influence the jury was not improper.

## V. *Admissibility of Statement to Police*

Bane next objects to the admission of a statement that he made to police while in custody. Bane contends that while in police custody, during interrogation, he made an unequivocal request for an attorney. An attorney was not provided promptly, and the police continued to question him. The statement he gave to police during this questioning was admitted during trial. Relevant portions of the interrogation follow:

Det. Whitlow: O.K. I believe the Officer's name you talked to upstairs was Officer Mike Crump. When you came in Officer Crump advised you of your rights, is that correct?

Clayton: Not (inaudible) I think he did.

Det. Whitlow: O.K. Well, I what I'm going to do is I'm going to advise you of your rights again.

Clayton: O.K.

Det. Whitlow: O.K. Just for the record. You have the right to remain silent, and anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and you have the right to have him with you during questioning, and if you can not afford a lawyer one will be appointed uh for you before any questioning if you wish. And if you decide to answer any questions now without having a lawyer present you still have the right to stop at any time and you also have the right to stop at any time until you talk to a lawyer. O.K., Clayton are you do you understand what all that means?

Clayton: Yes, I do.

Det. Whitlow: O.K. Uh we talked briefly earlier and you said you understood your rights and you would be willing to give me a statement uh concerning your activities yesterday, is that correct?

Clayton: Yeah.

Det. Whitlow: O.K. That yesterday being July the Fourth nineteen ninety. Uh at this time you [sic] willing to give me a statement without having a attorney present concerning your activities yesterday?

Clayton: Well I'll tell you what I did you know.

Det. Whitlow: O.K.

Clayton: I run around went drinkin.

Det. Whitlow: O.K. Well let's let's [sic] if you're willing to do that let's uh it's my understanding you don't want to sign the rights form now is that right?

Clayton: Not 'til you know?

Det. Whitlow: O.K.

Clayton: When I talk to my lawyer I'll.

Det. Whitlow: O.K. But you don't want a lawyer at this time, is that correct?

Clayton: I will get a lawyer.

Det. Whitlow: O.K. But you don't want one now is what I'm saying. O.K.?

Clayton: I'd like to have one but you know I it would be hard to get hold of one right now.

Det. Whitlow: Well what I am asking you Clayton is do you wish to give me a statement at this time without having a lawyer present?

Clayton: Well I can I can [sic] tell you what I did.

Det. Whitlow: O.K. that's what, that's what [sic] I'm asking.

Trial record at 2021–25.

Under the Sixth and Fourteenth Amendments to the United States Constitution, the defendant has the right to the presence and advice of counsel during custodial interrogation. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Once the right to counsel has been asserted by the defendant, the suspect cannot be subject to further interrogation until counsel has been made available unless the suspect himself initiates further communication and, thereby, knowingly and intelligently waives the right previously invoked. *See Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378.

The defendant analogizes his situation to those found in *Sleek v. State* (1986), Ind., 499 N.E.2d 751, and *Smith v. Illinois* (1984), 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488. Unlike this case, however, in both *Sleek* and *Smith,* the defendants made a clear request for counsel. In *Sleek,* the defendant was advised orally of his *Miranda* rights. He responded that "well, [I] feel like I ought to have an attorney around." Several minutes passed without verbal response to detectives continued questions regarding the facts of the case before the defendant finally nodded his head and signed a waiver form. In *Smith,* the defendant was informed, "you have a right to consult with a lawyer and to have a lawyer present with you when you are being questioned. Do you understand that?" The defendant responded, "uh, yeah. I'd like to do that." *Id.* at 93, 105 S.Ct. at 491, 83 L.Ed.2d at 492. The Supreme Court held that the defendant's statement, "yeah, I'd like to do that," represented a clear and unequivocal request for counsel. They note that lower courts were able to "construe Smith's request for counsel as 'ambiguous' *only* by looking to continued police questioning." *Id.* at 97, 105 S.Ct. at 494, 83 L.Ed.2d at 495. "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease." *Id.* at 98, 105 S.Ct. at 494, 83 L.Ed.2d at 495.

The *Smith* holding informs us that we must consider each of Bane's statements separately, in light of preceding statements, but without considering subsequent ones. When conducting this analysis, we can find no clear and unequivocal request for an attorney. At several points, Bane suggests that he would like to have a lawyer eventually, but in the meantime is willing to give a statement to the police.

■ We believe the facts of this case are more analogous to those found in our recent decision in *Pasco v. State* (1990), Ind., 563 N.E.2d 587. In *Pasco*, an officer repeated *Miranda* warnings to the defendants before the following exchange occurred:

P: I don't know what to do ... I don't know if I should stop or if I should get a lawyer.

W: Well, that's completely up to you Cephis.

P: I don't know what the hell to do, I mean. This is the first time with the law or anything ... I want to help you.

W: Okay.

P: That's the kind of guy I am. I ... I try to help anybody that needs help.

*Id.* at 591. We found the situation in *Pasco* also distinguishable from those facts discussed in *Sleek* and *Smith*. The fact that *Pasco* had been read his *Miranda* rights on numerous occasions, accompanied by the fact that the officer continued questioning designed to ascertain Pasco's true wishes with respect to obtaining counsel reflected that Pasco knew his rights, understood them, and voluntarily chose to forego his right to counsel and give a statement immediately. The defendant's statement in *Pasco* was held to be properly admitted. We hold that the statement in this case was properly admitted.

## VI. *Motion to Revoke*

■ Bane next alleges that error occurred when, immediately after Bane had been granted a motion in limine to suppress his prior convictions, the State filed a "motion to revoke probation" against Bane. Like all motions, the "motion to revoke" was public record. Also, the fact that the prosecutor intended to file the motion was reported in the local press. Bane argues that such a maneuver was an evidentiary harpoon designed to prejudice the jury against him. As the State points out, no law exists which would operate to prevent the filing of such a petition. This filing in no way injured Bane.

## VII. *Sufficiency of the Evidence*

■ Finally, Bane argues that the evidence is insufficient to sustain his conviction. Bane contends that the only evidence against him was that offered by Roy Wolfe, Jr., a possible suspect in the crime. This, however, is simply not the case. Over the course of a two-week trial, approximately 37 witnesses were presented, many by the State, who testified to a variety of facts, including Bane's purchase of a gun proximate to the time of the shooting, threats made by Bane to kill Laura prior to the commission of the crime, and boasts made by Bane after commission of the crime that he did, in fact, kill Laura. Had Roy Wolfe, Jr., never testified, the evidence would have been sufficient to sustain Bane's conviction. Additionally, as Bane himself recognizes, the testimony of Wolfe alone, as an accomplice to the crime, is sufficient to support a conviction. *See Stewart v. State* (1982), Ind., 442 N.E.2d 1026. There is sufficient evidence here to sustain the convictions.

## CONCLUSION

Bane presents no error upon which reversal of his conviction can be predicated. The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents with opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

Appellant's utterances in this case in response to an advisement of rights, like those considered in *Sleek v. State* (1986), 499 N.E.2d 751, and *Smith v. Illinois* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), are in my view sufficiently clear and unequivocal to constitute a request for counsel, and consequently at trial appellant was protected by the Fifth Amendment from the State's use of these admissions made to interrogators after that request. Likewise, I cannot view the error in admitting the statement as harmless constitutional error, as it is reasonably likely that the jury utilized the statement in deciding

whether it was appellant or Wolfe who had done the shooting.

For these reasons, related to Issue V, I would reverse the conviction and remand the case to the Superior Court with instructions to grant a new trial.

DICKSON, J., concurs.