Michael DEARMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–9908–CR–422.

Supreme Court of Indiana.

March 9, 2001.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice

After a trial by jury, Michael Dearman was convicted of murder and auto theft. The trial court sentenced him to consecutive terms of sixty-five years and three years respectively. In this direct appeal, Dearman raises two issues for our review which we rephrase as follows: (1) did the trial court err in refusing to give Dearman's tendered instructions on lesser included offenses; and (2) did the trial court err in admitting an audiotape recording of a statement Dearman gave police? Finding no error, we affirm.

**Facts**

On August 26, 1998, Floyd McClendon's nude and partially decomposed body was discovered under a pile of branches and debris in the backyard of a vacant house on West 31st Street in Indianapolis. A police investigation eventually led to Dearman who confessed to the killing, but claimed it just happened as he tried to thwart McClendon's sexual advances. In a statement given to police, Dearman said he met McClendon at a liquor store one evening in August 1998. Dearman told police he had been attempting to gather information about some of his relatives with whom he apparently had little contact. McClendon was acquainted with two of Dearman's uncles and offered to share what he knew about them with Dearman. The two rode around in McClendon's car and eventually stopped at the vacant house. As the two sat on the hood of McClendon's car talking, Dearman claimed that McClendon made sexual advances toward him and a scuffle ensued. Dearman said he was trying to get McClendon off him and the next thing he knew McClendon was dead. He immediately fled the scene in McClendon's car. Returning later with a friend, Anthony Goodall, Dearman took money, jewelry, and a credit card from McClendon's body. Dearman sold the jewelry to a local pawnshop and eventually abandoned McClendon's car.

During their investigation, police recovered a thirty-four pound concrete block that Goodall saw Dearman remove from McClendon's car. Dearman told Goodall the block was a "murder weapon." R. at 355. The pathologist testified at trial that the cause of death was blunt force injury to the head. First, there was an impact to the front of McClendon's face, which broke the bones to his eye sockets and fractured his upper jaw. Second, there was an impact to the top of his head, which depressed a fragment of bone down into the skull. This latter injury caved in McClendon's skull and required a great deal of force. According to the pathologist, the injuries were consistent with having been caused by the concrete block that Dearman discarded. In the opinion of the pathologist, if the concrete block was in fact the fatal weapon, then it would have taken two blows to inflict the injuries that McClendon sustained.

A jury convicted Dearman of murder and auto theft, and the trial court sentenced him to a total executed term of

sixty-eight years imprisonment. This direct appeal followed. Additional facts are set forth below.

## Discussion

### I.

■ Dearman tendered three instructions on lesser included offenses which the trial court refused: reckless homicide, involuntary manslaughter, and voluntary manslaughter. Dearman contends the trial court erred in refusing to give the tendered instructions because there was a serious evidentiary dispute that distinguished the greater offenses from the lesser included ones. In deciding whether to give a requested instruction on a lesser included offense, the trial court is required to determine whether the offense is either inherently or factually included in the charged offense and whether there is a serious evidentiary dispute regarding any element that distinguishes the greater offense from the lesser offense. *Evans v. State*, 727 N.E.2d 1072, 1080–81 (Ind.2000) (citing *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995)).

■ The only element distinguishing murder from reckless homicide is the defendant's state of mind. Reckless homicide occurs when the defendant "recklessly" kills another human being. Ind.Code § 35–42–1–5. Murder, as charged in this case, occurs when the killing is done "knowingly." I.C. § 35–42–1–1. A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35–41–2–2(b). One engages in conduct recklessly if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I.C. § 35–41–2–2(c). Had there been a serious evidentiary dispute as to whether Dearman acted knowingly or recklessly, the trial court would have had to give an instruction on reckless homicide. *Lyttle v. State*, 709 N.E.2d 1, 3 (Ind.1999). In like fashion, the element of intent distinguishes

involuntary manslaughter from murder. The trial judge would have been required to give an instruction on involuntary manslaughter only if there was a serious evidentiary dispute about what Dearman intended to do—kill or batter. *Lynch v. State*, 571 N.E.2d 537, 539 (Ind.1991).

■ Dearman's own statement to police confirmed that he killed McClendon, and the State's evidence showed that McClendon died as the result of being twice struck in the head with a thirty-four pound concrete block. At least one of the blows, resulting in a bone fragment being depressed into McClendon's skull, required a great deal of force. Contrary to Dearman's contention, this evidence indicates that Dearman intended to kill McClendon, not to batter him. The evidence also indicates that Dearman was aware there was a high probability that his assault would result in McClendon's death. There was no serious evidentiary dispute on either point. We conclude the trial court did not err in refusing to give Dearman's tendered instructions on reckless homicide and involuntary manslaughter.

■ The element distinguishing murder from voluntary manslaughter is "sudden heat," which is an evidentiary predicate that allows mitigation of a murder charge to voluntary manslaughter. *Bane v. State*, 587 N.E.2d 97, 100 (Ind.1992). It is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Wilson v. State*, 697 N.E.2d 466, 474 (Ind.1998). An instruction on voluntary manslaughter is supported if there exists evidence of sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection. *Roark v. State*, 573 N.E.2d 881, 882 (Ind. 1991). Any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter. *Id.*

The trial court expressed its belief that there was a serious evidentiary dispute concerning whether Dearman acted under sudden heat, namely: that he was provoked by McClendon's alleged sexual advances. However, the trial court refused to give Dearman's tendered instruction on voluntary manslaughter relying on this Court's decision in *Battles v. State,* 688 N.E.2d 1230 (Ind.1997). In that case, we held that the defendant was not entitled to an instruction on the defense of accident when the only evidence introduced at trial to support such a defense was the defendant's own out-of-court statement. *Id.* at 1234. Specifically, we declared "[A] defendant cannot make exculpatory statements outside court, present no evidence in defense, preclude the state from cross-examining the assertions, and then be entitled to have the self-serving statements constitute substantive evidence supporting an instruction on the defense of accident." *Id.*

■ Here, the record shows that Dearman elected not to testify or present evidence on his own behalf. The only evidence of alleged sudden heat was contained in Dearman's out-of-court statement to police, which the State introduced at trial. The trial court reasoned that like the defense of accident, a serious evidentiary dispute concerning sudden heat could not be created solely by the defendant's out-of-court statement. Accordingly, the trial court refused Dearman's tendered instruction of voluntary manslaughter. We conclude the trial court erred in its reliance on *Battles.* However the error does not warrant reversal and a new trial.

■ The quote in *Battles* on which the trial court relied was part of a larger quote in which we declared:

While a criminal defendant has the constitutional right not to testify at trial, *the defendant has the burden of proof on any affirmative defense.* In this case the appellant did not testify at trial or present other evidence to support his

affirmative defenses. While defendants have the prerogative to choose the trial strategy deemed best for them, appellant cannot make exculpatory statements to a court appointed psychiatrist, present no evidence on his defense, preclude the State from cross-examining appellant's assertions made through the psychiatrist, and then expect such self-serving statement to constitute substantive evidence for his tendered instructions.

*Clemens v. State,* 610 N.E.2d 236, 241 (Ind.1993) (emphasis added) (quoting *Brown v. State,* 485 N.E.2d 108, 111 (Ind. 1985)). Unlike the defense of accident, mitigation in the form of sudden heat is not an affirmative defense on which the defendant bears an initial burden of proof by a preponderance of the evidence. Instead, the defendant bears no burden of proof with respect to sudden heat, but only bears the burden of placing the issue in question where the State's evidence has not done so. *Bradford v. State,* 675 N.E.2d 296, 300 (Ind.1996); *Wolfe v. State,* 426 N.E.2d 647, 652 (Ind.1981). In this case, the State's evidence placed the question of sudden heat before the jury. Dearman had no further obligation on this point, and if the evidence was sufficient to raise a serious evidentiary dispute, then he was entitled to a jury instruction on the lesser offense of voluntary manslaughter. However our review of the record shows no such dispute, and therefore the trial court properly refused the instruction.

■ In his statement to police, Dearman said that as the two men sat on McClendon's car at the vacant property, McClendon began talking about gay men and told Dearman that he was "nice looking." R. at 262. Dearman told police that McClendon began biting on his neck and grabbing his thighs. R. at 262. Dearman said he resisted, and McClendon threw him to the ground. R. at 262. Dearman then stated that he was afraid, tried to get McClendon off him, and the next thing he knew McClendon was dead. R. at 262.

At best, the statement shows that Dearman got into a scuffle with McClendon when McClendon made sexual advances toward him. There is no indication in the record before us that Dearman was in such a state of terror or rage that he was rendered incapable of cool reflection. Further, the evidence showed that Dearman struck McClendon twice in the head with a thirty-four pound concrete block. Lifting and striking a person in the head twice with such a large object in a claimed attempt to thwart sexual advances does not indicate that the killing was done in sudden heat and without reflection. We conclude there was no appreciable evidence of sudden heat and thus no serious evidentiary dispute on the element distinguishing murder from voluntary manslaughter. Accordingly, the trial court properly refused to give Dearman's tendered instruction on this lesser included offense.

## II.

Dearman next contends the trial court erred in allowing into evidence his tape-recorded statement to police along with a typed transcript of the recording. According to Dearman, the recording was largely inaudible and thus it likely caused the jury to speculate as to its content.

 To be admissible at trial, a recording must be of such clarity as to be intelligible and enlightening to the jury. *Lamar v. State*, 258 Ind. 504, 282 N.E.2d 795, 800 (1972). However, every word of a recording need not be intelligible. *Patton v. State*, 501 N.E.2d 436, 438 (Ind.1986). Rather, the tape recording, taken as a whole, must be of such clarity and completeness to preempt speculation in the minds of the jurors as to its content. *Id.* The trial court has wide discretion in deciding whether to admit a tape recording as evidence. *McCollum v. State*, 582 N.E.2d 804, 812 (Ind.1991); *Sharp v. State*, 534 N.E.2d 708, 712 (Ind.1989).

We have listened to the tape recording and viewed the transcript. Although a few of Dearman's words are inaudible or indiscernible, Dearman's account of the events on the night McClendon was killed and the days that followed is abundantly clear on the tape. Thus, the recording as a whole is sufficiently clear and intelligible to be admissible. The trial court did not abuse its discretion in admitting the recording as evidence.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur.

DICKSON, J., dissents without opinion.