**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Aug 14 2013, 5:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**C. ROBERT RITTMAN**
**TIA R. BREWER**
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HENRY MCMULLEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1209-CR-778 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Jeffrey D. Todd, Judge
Cause No. 27D01-1105-MR-94

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Henry McMullen appeals his conviction for murder. McMullen raises one issue which we restate as whether the trial court committed fundamental error in instructing the jury. We affirm.

FACTS AND PROCEDURAL HISTORY

On May 21, 2011, a group of people, including McMullen, McMullen's girlfriend Chandra Baity, Braylinn Mitchell, and others left a night club at around 3:00 a.m. and began to travel to Baity's house. At some point, Maurice Clark and Arthur Drake also arrived at Baity's house looking for "weed." Transcript at 207. At Baity's house, McMullen, Drake, Clark, Mitchell, and several others were around the porch area of the house, Clark and Mitchell started to argue, and then Clark and McMullen "had words" about a house that "had got shot up." Id. at 210. McMullen stated that everybody had to leave. Clark refused and "kept sayin' he ain't goin' nowhere." Id. at 485. Clark grabbed a moped, which was not running, sat on it, and "pretended to like ram it into" McMullen. Id. at 549. Clark stated he was going to fight McMullen and that he was going to have his dad or uncles beat him up, and McMullen stated "I'm cool with your people." Id. at 546. At some point, Clark flicked a cigarette at McMullen. Drake testified that McMullen "really ain't do nothin' at the first, he just like laughed him off and just kept his mouth shut." Id. at 211.

A short time later, McMullen went inside the house, emerged after approximately ten minutes wearing a winter sock hat that he had not been previously wearing, and fired two shots into the air. Clark ran off the porch, and McMullen ran after him. McMullen placed the gun to Clark's head and shot him. Clark fell to the ground under a street light.

2

Clark was in a pool of blood, had bullet holes in him, kept spitting up blood when he tried to speak, and could make only gurgling sounds. Clark died as a result of his injuries. Neither Clark nor Drake were armed, and McMullen was the only person in the group with a gun. A subsequent autopsy determined that Clark died from the gunshot wound to his head, that he also suffered a gunshot wound to his abdomen, and that he sustained five entrance wounds and four exit wounds with one bullet found lodged in his head.

On May 23, 2011, the State charged McMullen with murder. On August 3, 2012, the State alleged that McMullen was an habitual offender. At trial, defense counsel submitted its proposed instruction on murder and voluntary manslaughter, and after hearing arguments, the court ruled that the jury should be instructed on voluntary manslaughter as a lesser included offense of murder. The court gave Final Instruction No. 4, which defined murder and voluntary manslaughter. The jury found McMullen guilty of murder and found him to be an habitual offender. The court sentenced him to sixty years in the Indiana Department of Correction for murder and enhanced the sentence by thirty years for the habitual offender adjudication.

## DISCUSSION

The issue is whether the trial court committed fundamental error in instructing the jury on voluntary manslaughter. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003), cert. denied, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is

3

reviewed only for an abuse of that discretion. Id. at 1163-1164. To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Benefiel v. State, 716 N.E.2d 906, 914 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 830, 121 S. Ct. 83 (2000). Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. Gantt v. State, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005). An error is to be disregarded as harmless unless it affects the substantial rights of a party. Oatts v. State, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009).

McMullen did not object to Final Instruction No. 4 at trial. Thus, he has waived the claim of error and it is unavailable on appeal unless it rises to the level of fundamental error. Echols v. State, 722 N.E.2d 805, 807 (Ind. 2000). Our standard of review for claims of fundamental error is well settled. "The fundamental error exception to the waiver rule is available only where the record reveals clearly blatant violations of basic and elementary principles of due process and the harm or potential for harm cannot be denied." Book v. State, 880 N.E.2d 1240, 1248 (Ind. Ct. App. 2008), trans. denied. "To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." Rowe v. State, 867 N.E.2d 262, 266 (Ind. Ct. App. 2007). The fundamental error rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002), reh'g denied.

The instruction challenged by McMullen, Final Instruction No. 4, provided:

The crime of murder is defined by law as follows:

A person who knowingly or intentionally kills another human being, commits murder, a felony.

Included in the charge in this case is the crime of voluntary manslaughter, which is defined by statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.

The offense is a Class A felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

Before you may convict the Defendant, the state must have proved each of the following beyond a reasonable doubt:

1.     The Defendant
2.     knowingly or intentionally
3.     killed
4.     Maurice Clark
5.     and the Defendant was not acting under sudden heat
6.     and the Defendant killed by means of a deadly weapon.

If the State failed to prove each of elements 1 through 4 of the crime of murder beyond a reasonable doubt, you must find the Defendant not guilty of murder as charged.

If the State did prove each of elements 1 through 4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the Defendant guilty of voluntary manslaughter, a Class A felony, a lesser included offense of murder.

If this is your finding but that the Defendant did not do so by means of a deadly weapon, you may find the Defendant guilty of voluntary manslaughter, a Class B felony, a lesser included offense of murder.

Appellant's Appendix at 41-42.

McMullen contends that, in Final Instruction No. 4, sudden heat was treated as an element of voluntary manslaughter, that sudden heat is a mitigating factor and not an element of voluntary manslaughter, that the instruction is misleading and an incorrect statement of law, and that the erroneous instruction resulted in fundamental error. The State maintains that McMullen fails to establish fundamental error, that Final Instruction No. 4 was a correct statement of law, that the State had an affirmative burden to disprove the mitigating state of mind of sudden heat beyond a reasonable doubt, and that the State thoroughly discharged this burden.

### DECISION

A person commits murder when the person "knowingly or intentionally kills another human being." Ind. Code § 35-42-1-1. On the other hand, a person commits voluntary manslaughter when the person knowingly or intentionally kills another human being "while acting under sudden heat." Ind. Code § 35-42-1-3(a). Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. Ind. Code § 35-42-1-3(b). "Sudden heat" is characterized as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." Dearman v. State, 743 N.E.2d 757, 760 (Ind. 2001).

Sudden heat is not an element of voluntary manslaughter. Boesch, 778 N.E.2d at 1279. Rather, once a defendant presents evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt. Id. Although the State has

6

the burden of negating the existence of sudden heat beyond a reasonable doubt, in order to inject that issue at all the defendant must point to some evidence supporting sudden heat whether this evidence be in the State's case or the defendant's own. Jackson v. State, 709 N.E.2d 326, 328 (Ind. 1999); see Massey v. State, 955 N.E.2d 247, 255 n.4 (Ind. Ct. App. 2011) (noting that "*only* when evidence of sudden heat is presented does the State assume the burden of proving the absence of sudden heat to obtain a murder conviction").

To the extent that Final Instruction No. 4 incorrectly indicates or suggests, as argued by McMullen, that sudden heat is an element of voluntary manslaughter, the instruction is erroneous. See Boesch, 778 N.E.2d at 1279 ("An instruction assigning to the State the burden of affirmatively proving sudden heat is erroneous as a matter of law and, when properly objected to at trial, may require a new trial on the murder charge."). However, the Indiana Supreme Court has held that a jury instruction substantially similar to Final Instruction No. 4 does not amount to fundamental error. See Bane v. State, 587 N.E.2d 97, 100 (Ind. 1992), reh'g denied.

The instruction in Bane improperly suggested to the jury that sudden heat is an element that must be proven beyond a reasonable doubt by the State, rather than a mitigator, but also cited the voluntary manslaughter statute and informed the jury that sudden heat was a mitigating factor. Id. at 100-101. The Court concluded that the challenged instruction was "inartfully drafted" and "technically erroneous," but that it did not "constitute fundamental error because it did not deprive the defendant of his due process rights." Id. at 101.

7

In this case, Final Instruction No. 4 suffered from the same infirmity, but also informed the jury that sudden heat was a mitigating factor. See Appellant's Appendix at 41. Additionally, the Instruction informed the jury that "[t]he State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat." Id. We conclude, consistent with the Indiana Supreme Court's guidance, that the instruction in this case did not constitute fundamental error. See Bane, 587 N.E.2d at 99-101; Boesch, 778 N.E.2d at 1279-1280 (holding that the jury instruction for voluntary manslaughter requiring the State to prove sudden heat was erroneous but did not constitute fundamental error, and noting in part that it was highly improbable that the jury was misled as to an accurate legal understanding of sudden heat and its significance, that, like the instruction in Bane, the instruction stated that the existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter, and that if there is some evidence of sudden heat then the State bears the burden of negating the existence of sudden heat beyond a reasonable doubt); see also Eichelberger v. State, 852 N.E.2d 631, 637 (Ind. Ct. App. 2006) (noting that, in contrast to Boesch, the jury was not instructed that in order to prove the offense of murder, as opposed to voluntary manslaughter, if there is some evidence of sudden heat, then the State bears the burden of negating the existence of sudden heat beyond a reasonable doubt), trans. denied.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not commit fundamental error in instructing the jury and affirm McMullen's conviction for murder.

Affirmed.

RILEY, J., and BRADFORD, J., concur.