William WILCOXEN, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 10A01–9804–PC–160.

Court of Appeals of Indiana.

Jan. 26, 1999.

Transfer Denied March 16, 1999.

See also, 619 N.E.2d 574.

Susan K. Carpenter, Public Defender of Indiana, Richard Denning, Deputy Public Defender, Indianapolis, Indiana, for appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, for appellee.

## OPINION

ROBB, Judge.

William Wilcoxen appeals the denial of his petition for post-conviction relief challenging his conviction of Murder and the resulting sentence of sixty years. We affirm.

*Issues*

Wilcoxen presents for our review the following restated issues:

1. Whether it was fundamental error to instruct the jury that "sudden heat" is an

element of the offense of voluntary manslaughter; and

2. Whether he was denied the effective assistance of counsel when trial counsel tendered the erroneous instruction to the trial court and appellate counsel failed to raise the issue of the erroneous instruction or trial counsel's ineffectiveness on direct appeal.

### Facts and Procedural History

The facts, as set forth by our supreme court in Wilcoxen's direct appeal, are as follows:

On the evening of January 12, 1991, and the early morning hours of January 13, appellant and some of his friends toured several bars in Clark County. In Bill's Lounge, also known as River Falls Lounge, appellant came in contact with Kathy Chism Shetler, the victim in this case, David Shetler, the husband of the victim, David's aunt, Doris Hall, and her two daughters. The victim's companions, with the exception of the aunt, all left, including her husband.

After the husband left, appellant approached the victim and the aunt and asked them to dance, which both women did. When the bartender gave the "last call" prior to closing, the victim's aunt went to warm up her car, and the victim told her to wait for her. However, after the aunt waited for quite some time and the victim had not appeared, the aunt left. The victim's friend, Regina Thompson, testified that she saw the victim and appellant walking down the street from the bar toward the Ohio River. A few minutes later she saw them together on an overlook by the river.

In his statement to police, appellant told them he walked to the river with the victim. When they decided to go under the overlook he preceded the victim, and when he turned around under the overlook, he observed her approaching him with a knife. He said he managed to wrest the knife from her and throw it away. He then beat the victim and ran from the scene.

Prior to giving the statement to the police, appellant had told his friend, Ken-neth Thompson, and his roommate that he and the victim had gone under the overlook to have sex. When each of them had partially removed their clothing, she pulled a knife and demanded his wallet. He said he grabbed the knife, threw it toward the river, then grabbed "sticks and stuff" and started hitting her. He said he "just went nuts."

After hearing appellant's story, his roommate and Thompson drove to the scene to find the victim; however, they were unsuccessful. They returned to the house and told appellant they had not found the victim. Appellant then returned to the scene with the two men and the victim's body was found. The men went to a telephone booth, called the police, and waited at the scene for the police to arrive. Appellant was taken to the police station and after being questioned, a breathalyzer test which was administered at approximately 8:30 a.m. showed an .08% blood alcohol content.

*Wilcoxen v. State,* 619 N.E.2d 574, 575 (Ind. 1993). Additional facts relevant to this appeal will be supplied as necessary.

Wilcoxen was tried by a jury and convicted of Murder. He received an enhanced sentence of sixty years. On direct appeal, our supreme court affirmed his conviction and sentence. *Id.* at 577.

In 1994, Wilcoxen filed a *pro se* petition for post-conviction relief, which was amended by counsel in 1997. Wilcoxen asserted that the trial court committed fundamental error in instructing the jury that sudden heat is an element of the lesser-included offense of voluntary manslaughter. Wilcoxen also asserted that his trial counsel was ineffective for tendering the erroneous instruction, and that his appellate counsel was ineffective for failing to raise these issues on direct appeal. The post-conviction court denied the petition, making the following relevant conclusions of law:

1. [Wilcoxen] contends that Instruction No. 12 tendered by his trial counsel resulted in the jury being improperly instructed on the lesser included offense of voluntary manslaughter. He argues that the in-

struction was erroneous because it stated that sudden heat is an element of the offense.

. . .

3. This court concurs with the post conviction counsel that Instruction No. 12 is incorrect. Sudden heat is not an element of the offense of voluntary manslaughter. *Palmer v. State (Palmer II)*, 573 N.E.2d 880 (Ind.1991), *Bane [v. State*, 587 N.E.2d 97, 100 (Ind.1992) ]. Rather, sudden heat is a mitigating factor which reduces what would otherwise be murder to voluntary manslaughter. I.C. 35–42–1–3(b).

4. Our supreme court did hold in *Palmer II* that failure to object to an instruction stating that sudden heat was an element of voluntary manslaughter constituted ineffective assistance of counsel sufficient to grant post conviction relief. *Id.* at 880. However, that instruction also incorrectly included lack of malice as an element. Such is not the case in this proceeding.

5. The jury instruction in the *Bane* case "at one point suggested to the jury that sudden heat was an element of the crime on [sic] voluntary manslaughter. At another point, it cited the voluntary manslaughter statute and informed the jury that sudden heat was a mitigating factor.["] *Id.* at 100–01. The Supreme Court held that the instruction did not constitute fundamental error as it did not deprive *Bane* of his due process rights. *Id.* at 101. The Court also stated that an error in the wording of a voluntary manslaughter instruction may be cured by other instructions given simultaneously to the jury. *Id.* at 101.

. . .

9. While the jury was not expressly instructed using the words "mitigator" or "mitigating factor", it was not misled. Instruction No. 5 specified that voluntary manslaughter was a lesser included offense. Instruction No. 10 discusses what is necessary "in order for a killing to be *reduced to* voluntary manslaughter". Instruction No. 11 discussing provocation and sudden heat states, "[A]ll that is required to *reduce* a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the Defendant such emotions as anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary person, and to prevent deliberation and premeditation, to exclude malice, and to render the Defendant incapable of cool reflection." Nor was the jury confused as to the burden of proof. By Instruction No. 1, the jury was advised as to the presumption of innocence, and that he was "not required to present any evidence to prove his innocence or to explain anything." They were again so advised by the Court's Instruction No. 7. Any error in the wording of Instruction No. 12 was cured by the foregoing and other instructions given simultaneously to the jury. Thus, while Instruction No. 12 was technically erroneous, the instruction does not constitute fundamental error, and [Wilcoxen's] claims that his trial counsel provided ineffective assistance of counsel are without merit.

P–C.R.R. 74–77. Wilcoxen now appeals the denial of his petition for post-conviction relief.

### Discussion and Decision

#### A. Standard of Review

The purpose of a petition for post-conviction relief is to provide a means for raising issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Carrington v. State*, 678 N.E.2d 1143, 1146 (Ind.Ct.App.1997), *trans. denied*. Post-conviction procedures are reserved for subsequent collateral challenges and may not provide a "super appeal" for the convicted. *Weatherford v. State*, 619 N.E.2d 915, 916 (Ind.1993). When the petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Montano v. State*, 649 N.E.2d 1053, 1056 (Ind.Ct.App. 1995), *trans. denied*. Thus, in general, if an issue was available on direct appeal but not advanced, it is deemed waived for post-conviction review. *Madden v. State*, 656 N.E.2d 524, 526 (Ind.Ct.App.1995), *trans. denied*. But see *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998) (holding that "a Sixth

Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction proceedings.").

■ There is a "fundamental error" exception to the general rule of waiver which is available only when the record reveals clearly blatant violations of basic and elementary due process and when the harm or potential for harm cannot be denied. *Minnick v. State*, 698 N.E.2d 745, 759 (Ind.1998). Application of this exception in post-conviction proceedings is generally limited to instances of deprivation of Sixth Amendment right to counsel or to an issue demonstrably unavailable to the petitioner in the prior proceedings. *Id.* In the instant case, where the error in the voluntary manslaughter instruction was not brought as an issue on direct appeal, we will only reverse based upon the instruction if we find it to be fundamental error.

■ The petitioner must establish his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of the witnesses. *Montano*, 649 N.E.2d at 1056. To prevail on appeal from the denial of a petition for post-conviction relief, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Id.* at 1120.

### B. Voluntary Manslaughter Instruction

■ Wilcoxen contends that the trial court committed fundamental error in instructing the jury that sudden heat is an element of voluntary manslaughter which the State was required to prove beyond a reasonable doubt. The jury was instructed as follows:

### INSTRUCTION NO. 10 VOLUNTARY MANSLAUGHTER

*In order for a killing which would otherwise be murder to be reduced to voluntary manslaughter,* the killing must have been upon a sudden heat of passion, caused by sufficient provocation upon the part of the one killed, and the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool, and there must have been a causal connection between the provocation, the passion and the fatal act.

The law does not recognize the use of words alone as sufficient provocation *to reduce the offense from murder to manslaughter,* the other essential elements of murder being present.

. . .

If death, though knowingly and intentionally caused, appears to have been inflicted immediately after provocation deemed by the law adequate to excite sudden and angry passions in the mind of persons ordinarily constituted, and before sufficient time elapses for deliberation and for the passions to cool, *then this fact reduces the offense from murder to manslaughter.* The killing is still unlawful, however, because a person is bound to curb his passions, and the offense, if all other essential elements exist, is voluntary manslaughter.

### INSTRUCTION NO. 11 VOLUNTARY MANSLAUGHTER

#### Provocation/Sudden Heat

*All that is required to reduce a homicide from murder to voluntary manslaughter* is sufficient provocation to excite in the mind of the Defendant such emotions as anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary person, and to prevent deliberation and premeditation, to exclude malice, and to render the Defendant incapable of cool reflection.

### INSTRUCTION NO. 12 LESSER INCLUDED OFFENSES— ELEMENTS

The Defendant is charged with Murder. Voluntary Manslaughter is a lesser includ-

ed offense of Murder. The elements of Voluntary Manslaughter are:

The Defendant

1. knowingly or intentionally
2. killed
3. Kathy Chism Shelter
4. while acting under sudden heat.

If you find the State did prove each and every one of these elements beyond a reasonable doubt, you should return a verdict of guilty of voluntary manslaughter, Class B felony....

R. 290–93 (emphasis added).

▬▬▬▬ At the time of Wilcoxen's trial, it was already well-settled that sudden heat is not an element of voluntary manslaughter. *See Palmer v. State,* 553 N.E.2d 1256, 1259 (Ind.Ct.App.1990), *aff'd on reh'g,* 573 N.E.2d 880 (Ind.1991). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder ... to voluntary manslaughter." Ind.Code § 35–42–1–3(b). Where there is evidence of sudden heat, the burden is on the State to *negate* its existence beyond a reasonable doubt. *Clark v. State,* 668 N.E.2d 1206, 1209 (Ind.1996), *cert. denied,* 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).

Courts of this state have had several opportunities to address the issue of whether a voluntary manslaughter instruction which includes sudden heat as an element of the offense constitutes fundamental error. *See id., Isom v. State,* 651 N.E.2d 1151 (Ind. 1995); *Bane v. State,* 587 N.E.2d 97 (Ind. 1992); *Palmer v. State,* 553 N.E.2d 1256 (Ind.Ct.App.1990).

In *Palmer,* a panel of this court held that an instruction informing the jury that sudden heat is an element of the offense of voluntary manslaughter was fundamental error and that the defendant's counsel was ineffective for failing to object to the instruction or tender a correct instruction. 553 N.E.2d

1256, 1259–60 (Ind.Ct.App.1990). The erroneous instruction stated:

## VOLUNTARY MANSLAUGHTER

"A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony."

The essential elements of this crime are:

1. The voluntary killing of a human being
2. Without malice, and
3. In sudden heat.

Sudden heat as used herein means an access [sic] of rage or anger suddenly arising from a contemporary provocation occurring at the time of the killing.

*Id.* at 1258. This instruction was erroneous in three ways: (1) it included the absence of malice as an element of voluntary manslaughter; (2) it included the presence of sudden heat as an element of voluntary manslaughter;· and (3) it wholly failed to inform the jury that sudden heat was a mitigating factor which the State was required to *disprove* beyond a reasonable doubt. *Id.* at 1260–61. The court of appeals reversed the denial of Palmer's petition for post-conviction relief. *Id.* at 1261. The supreme court affirmed the court of appeals on rehearing. *Palmer v. State,* 573 N.E.2d 880, 880 (Ind. 1991).

Several subsequent decisions, however, have held that a jury instruction incorrectly including sudden heat as an element of voluntary manslaughter is not fundamental error if the instruction also explains that sudden heat is a mitigating factor. *Clark,* 668 N.E.2d at 1209; *Isom,* 651 N.E.2d at 1153; *Bane,* 587 N.E.2d at 101. In each case, the instruction included sudden heat as an element of the offense, but also informed the jury that sudden heat is a mitigating factor that reduces murder to voluntary manslaughter.[1] As stated in *Bane:*

---

1. The instruction in *Clark* read in pertinent part:
   The crime of Voluntary Manslaughter, an included offense of Count I: Murder, is defined by statute as follows:
   'A person who knowingly ... kills another human being while acting under sudden heat, commits Voluntary Manslaughter, a

Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.'
The existence of sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter.

The instruction at one point suggested to the jury that sudden heat was an element of the crime of voluntary manslaughter. At another point, it cited the voluntary manslaughter statute and informed the jury that the sudden heat was a mitigating factor. Although inartfully drafted and, in fact, technically erroneous, the instruction does not constitute fundamental error because it did not deprive the defendant of his due process rights.

587 N.E.2d at 101.

Although we agree with Wilcoxen that the jury was never explicitly instructed that sudden heat is a *mitigating factor*, it was instructed at three times that sudden heat reduces the offense of murder to voluntary manslaughter. The instructions given to Wilcoxen's jury more closely resemble those given in *Clark, Isom* and *Bane* than that given in *Palmer*. Accordingly, although the inclusion of sudden heat as an element of the offense was erroneous, when read as a whole with the other instructions and with the references to sudden heat describing it as a factor which could reduce murder to manslaughter, the instruction does not constitute fundamental error.

### C. Ineffective Assistance of Counsel

Wilcoxen claims that his trial counsel was ineffective for tendering the voluntary manslaughter instruction which erroneously included sudden heat as an element of the offense. He also claims that his appellate counsel was ineffective for failing to raise the erroneous instruction and trial counsel's ineffective assistance as issues in his direct appeal. We disagree with both contentions.

▬▬▬ We analyze claims of both ineffective assistance of trial counsel and ineffective assistance of appellate counsel according to the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Johnson v. State*, 674 N.E.2d 180, 184 (Ind.Ct.App.1996), *trans. denied* (standard of review for claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel). First, we require the petitioner to show that,

in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. *Roche v. State*, 690 N.E.2d 1115, 1120 (Ind.1997). Second, we require the petitioner to show adverse prejudice as a result of the deficient performance, that is, that but for counsel's deficient performance, the result of the proceedings would have been different. *Taylor v. State*, 659 N.E.2d 1054, 1061 (Ind.Ct.App.1995), *trans. denied*. We will find prejudice when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unjust or unreliable. *Id.* It is not necessary to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Toan v. State*, 691 N.E.2d 477, 479 (Ind.Ct.App.1998).

▬▬▬ There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden falls on the petitioner to overcome that presumption. *Lee v. State*, 694 N.E.2d 719, 720 (Ind.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 554, 142 L.Ed.2d 461 (1998). A petitioner must show more than isolated poor strategy, bad tactics, a mistake, carelessness or inexperience; the defense as a whole must be inadequate. *Davis v. State*, 675 N.E.2d 1097, 1100 (Ind.1996).

▬▬▬ If an instruction is not fundamentally erroneous, then counsel is not ineffective for failing to object at trial, or failing to raise the issue on appeal. *Moore v. State*, 649 N.E.2d 686, 690 (Ind.Ct.App.1995), *trans. denied*. Although in this case, it was trial counsel who tendered the erroneous instruction, we have concluded that the instruction did not constitute fundamental error. Accordingly, Wilcoxen did not receive ineffective assistance of counsel.

---

## Conclusion

The post-conviction court did not err in denying Wilcoxen's petition for post-conviction relief. The voluntary manslaughter instruction, though erroneous, did not constitute fundamental error, and therefore, neither Wilcoxen's trial nor his appellate counsel were ineffective for failing to raise the issue. The judgment of the post-conviction court is affirmed.

Affirmed.

BAKER, J., and GARRARD, J., concur.